IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| SUSAN C. MUELLER, *Plaintiff,* | CASE NO. 3:15–cv–00022 |
| v. | MEMORANDUM OPINION |
| SPECIALIZED LOAN SERVICING, LLC, *ET AL.*, *Defendants.* | JUDGE NORMAN K. MOON |

This matter is before the Court upon Defendant Specialized Loan Servicing, LLC's ("SLS") motion to dismiss Plaintiff's complaint. For the following reasons, I will grant SLS's motion.[1]

## I. FACTS AS ALLEGED

Plaintiff Susan Mueller purchased a home in Palmyra, Virginia, in 2006. She signed a mortgage loan with Washington Mutual Inc. ("WAMU") in order to finance the purchase of the property. The loan had a principal of approximately $300,000, was for a thirty-year term at a fixed interest rate of approximately seven percent per annum, and had monthly payments of approximately $2,200.

In April 2007, Mueller discussed with Cory Hill of Countrywide Home Loans, Inc. ("Countrywide"), the possibility of refinancing her mortgage. Hill represented to Mueller that refinancing would result in a principal amount of approximately $307,000, would be for a thirty-year term at a lower fixed interest rate, and would have monthly payments of approximately $1,400.

---

[1] Count 3 of Mueller's complaint alleges breach of contract against Bank of America, N.A. ("BOA"). Because BOA has been dismissed from this action with prejudice, Count 3 will be dismissed with prejudice. Likewise, BOA's pending motion to dismiss will also be dismissed, without prejudice.

In May 2007, a representative of Countrywide visited Mueller's property so that Mueller could sign a document finalizing the refinancing of the WAMU loan. The representative arrived on a holiday weekend and did not allow Mueller to read the documents before signing. Mueller nevertheless did sign the documents. Countrywide never provided Mueller with copies of the refinancing documents.

Mueller was shocked to learn upon receiving her first monthly payment notice that the mortgage was an adjustable rate mortgage with an initial monthly payment of $3,800, and that the principal of the loan had increased to $324,000.[2] Mueller immediately protested to Hill that the terms of the loan were different than what he had represented to her, and Hill assured Mueller that the terms of the first statement were in error and that they would soon be corrected. Trusting Hill, Mueller complied with Countrywide's payment requests.

Mueller lost contact with Hill sometime after June 2007. Hill left Countrywide, and the office in which Hill worked closed. Mueller thereafter contacted other Countrywide personnel, who assured her that the terms of the refinancing were in error and would be corrected. Mueller continued to make the requested monthly payments to Countrywide in anticipation that Countrywide would correct the terms of the loan.

On January 8, 2008, Countrywide failed as a company and was acquired by BOA. Mueller contacted BOA and made continued and repeated attempts to correct the terms of the Countrywide loan. Mueller nevertheless continued to make monthly payments as requested by BOA.

In mid-2012, Mueller applied for a loan modification with BOA pursuant to the federal Home Affordable Modification Program ("HAMP"). In or before August 2012, BOA agreed to modify Mueller's loan to a thirty-year fixed rate loan with the principal amount reduced by

---

[2] Mueller claims that the terms of the loan were so alarming and severe that her fiancé committed suicide.

$150,000. In August 2012, BOA directed Mueller to stop making mortgage payments pending finalization of Mueller's applied-for HAMP modification, and Mueller complied with this request.

On December 11, 2012, BOA sold its interest in the Countrywide loan to HSBC Bank USA. BOA did so without Mueller's knowledge, and did so without completing the promised HAMP modification. BOA nevertheless continued to service the loan for some time, and BOA continually assured Mueller that no payments were due and that the HAMP modification would be forthcoming.

At some point after December 11, 2012, SLS began servicing the Countrywide loan. Soon thereafter, SLS began making numerous threatening and harassing telephone calls to Mueller. Representatives of SLS made repeated visits property for at least a two year period. They posted notices, threatened foreclosure, broke locks, and otherwise harassed Mueller.

SLS began foreclosure proceedings on June 19, 2014, but the proceedings were delayed because Mueller filed for bankruptcy protection on July 9, 2014. The bankruptcy was dismissed for procedural reasons on December 9, 2014.

During the bankruptcy case, Mueller became aware that the deed of trust recorded on May 25, 2007, for the Countrywide loan was a document with a forged signature.

On March 25, 2015, SLS renewed foreclosure proceedings, and on April 20, 2015, Mueller re-filed for bankruptcy protection.

## II. STANDARD OF REVIEW

When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept as true all well-pleaded allegations. *See Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Stated differently, in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

### III. DISCUSSION

#### A. DECLARATORY JUDGMENT

Mueller seeks a declaration that the deed of trust concerning her property is void and inoperative "[b]ecause of the referenced forgery of Mueller's signature . . . ." Compl. ¶ 44.

Mueller's complaint seeking declaratory relief must satisfy federal pleading standards. *See, e.g.*, *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 830 (11th Cir. 2010) ("[T]he requirements of pleading and practice in actions for declaratory relief are exactly the same as in other civil actions, including the requirement that the action is commenced by filing a complaint.") (internal quotation marks omitted); *Kam-Ko Bio-Pharm Trading Co. Ltd-Australia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 942 (9th Cir. 2009) (same). It fails to do so.

Mueller claims her signature on the deed of trust was forged. "In Virginia, forgery constitutes fraud." *Foster v. Wells Fargo Bank, N.A.*, No. 3:14–cv–00017, at *5 (W.D. Va. Aug. 13, 2014). Accordingly, Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements apply. *See, e.g.*, *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 789 (4th Cir. 1999) (claim that "government contractor submitted false signatures on purchase

requisition form" not stated with sufficient particularity under Rule 9(b) because complaint lacked detail about "which signature was fraudulent or unauthorized . . . who perpetrated the fraud, []or how the signature was fraudulent."); *see also Tyler v. Bank of America, N.A.*, CV No. 5:12–cv–909–DAE, 2013 WL 5923717, at *4 (W.D. Tex. Oct. 31, 2013) ("Applying Rule 9(b) to Plaintiffs' allegations of forgery was . . . proper."); *cf.* Black's Law Dictionary (9th ed. 2009) ("[F]orgeries are a species of fraud.").

Rule 9(b) requires Mueller to plead "with particularity the circumstances constituting fraud." Mueller's complaint states only that "[d]uring the bankruptcy case, Mueller first became aware that the deed of trust . . . for the Countrywide loan was a document with a forged signature." Compl. ¶ 40. This bare statement does not suffice. It does not state, for example, "which signature was fraudulent or unauthorized, . . . who perpetrated the fraud, [and] how the signature was fraudulent." *Harrison*, 176 F.3d at 789. Accordingly, Mueller's declaratory judgment action will be dismissed.

B. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Mueller claims that SLS is liable for intentional infliction of emotional distress ("IIED") because SLS "ma[de] numerous threatening and harassing telephone calls," "sen[t] a representative to the Property to harass Mueller," and "made repeated visit[s] to the Property [and] post[ed] notices, threaten[ed] foreclosure, br[oke] locks, and otherwise harass[ed] Mueller." Compl. ¶¶ 35–37.

"[E]motional distress resulting from a non-tactile tort may be compensated if the plaintiff alleges, and proves by clear and convincing evidence, that: [1] the wrongdoer's conduct is intentional or reckless; [2] the conduct is outrageous and intolerable; [3] the alleged wrongful conduct and emotional distress are causally connected; and, [4] the distress is severe." *Russo v.*

*White*, 400 S.E.2d 160, 162 (Va. 1991) (citing *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974)); *see also Marcantonio v. Dudzinski*, __ F.Supp.3d__, 3:15-cv-00029, 2015 WL 9239009, at *10 (W.D. Va. Dec. 17, 2015).[3]

SLS's alleged conduct is not outrageous and intolerable. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo*, 400 S.E.2d at 162 (quotation marks omitted). The conduct alleged in Mueller's complaint pales in comparison to the conduct found to satisfy this demanding standard. *See, e.g.*, *Williams v. Agency, Inc.*, 997 F. Supp. 2d 409, 414 (E.D. Va. 2014) (agency's videotaping of an intimate encounter between a wife and a third-person and the agency's subsequent distribution of the video and a field report describing the video to the wife's separated husband was outrageous); *Fuller v. Aliff*, 990 F. Supp. 2d 576, 580–81 (E.D. Va. 2013) (plaintiff sufficiently pled outrageous conduct where he claimed defendants punched him, kicked him, pinned him to the ground, struck him with a stone, held his head under water, choked him, and insulted him after they learned he was gay). Mueller's IIED claim will accordingly be dismissed.

C. PRELIMINARY INJUNCTION

Mueller also seeks a preliminary injunction prohibiting any further foreclosure action until this case is resolved. The plaintiff bears the burden to demonstrate the existence of each of the following four factors when seeking a preliminary injunction: (1) plaintiff is likely to succeed on the merits of her underlying claim or claims; (2) plaintiff is likely to suffer irreparable harm in

---

[3] Defendant argues, mistakenly, that because Virginia law requires IIED plaintiffs to satisfy a heightened pleading standard, Mueller must satisfy that standard in this Court. Not so. Rather, "Plaintiff's IIED claim must meet the pleading standard found in the Federal Rules, rather than the heightened standard required by Virginia state courts." *Nelson v. Green*, 965 F. Supp. 2d 732, 753 (W.D. Va. 2013); *see also Hatfill v. New York Times Co.*, 416 F.3d 320, 337 (4th Cir. 2005).

the absence of preliminary relief; (3) the balance of equities tips in plaintiff's favor; and (4) an injunction is in the public interest. *Luther v. Wells Fargo Bank, N.A.*, No. 4:13cv00072, 2014 WL 43694, *3 (W.D. Va. Jan. 6, 2014).

Because I will dismiss Mueller's declaratory judgment action and her IIED claim, she cannot succeed on the merits of her underlying claims. Accordingly, her motion for a preliminary injunction will be denied.

### IV. CONCLUSION

For the aforementioned reasons, Defendant SLS's motion to dismiss will be granted. An appropriate order will accompany this memorandum opinion.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this \_\_\_9th\_\_\_ day of March, 2016.

*/s/ Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE